IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-271-FL-3

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JOSAND FARMER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motions for reduction of sentence pursuant to § 404 of the First Step Act (DE 324, 325, 339, 353), for downward variance (DE 327), for leave to file reply (DE 348), to withdraw motion for leave to file reply (DE 349), to order the government to respond to certain claims (DE 351), to expedite ruling (DE 355, 359), and for compassionate release (DE 356). The government responded in opposition to the motion for sentence reduction filed by defendant's counsel, but did not respond to the remaining motions. The government also moves to seal certain records filed in support of its opposition. (DE 347). For the following reasons, the court denies defendant's motions for sentence reduction, denies as moot defendant's remaining motions, and grants the government's motion to seal.

**BACKGROUND**

By way of indictment filed August 4, 2010, defendant was charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, one kilogram or more of phencyclidine (PCP), and a quantity of 3,4 Methylenedioxymethamphetamine (MDMA), in violation of 21 U.S.C. § 846 (count one); distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (count three); and distribution of a quantity of cocaine base, in

violation of 21 U.S.C. § 841(a)(1) (count seven).   Defendant pleaded not guilty to all charges on February 14, 2011.

On March 16, 2011, the government filed notice of intent to seek enhanced penalty pursuant to 21 U.S.C. § 851 based on defendant's prior North Carolina conviction for possession with intent to sell or deliver cocaine, which increased the statutory penalty ranges to 20 years to life imprisonment on count one, 10 years to life imprisonment on count three, and not more than 30 years' imprisonment on count seven.   Defendant did not contest the validity of the predicate North Carolina drug conviction prior to his trial or sentencing.

On March 24, 2011, a jury found defendant guilty of all counts.   The court held defendant's sentencing hearing on September 26, 2011.   The presentence investigation report ("PSR"), which the court adopted, determined defendant was a career offender, which increased the offense level to 37 and criminal history category to VI.   (PSR (DE 133) ¶ 59).   The PSR found that defendant qualified for the career offender enhancement based on his prior convictions for common law robbery, assault with a deadly weapon inflicting serious injury, sell or deliver cocaine, and assault inflicting serious bodily injury.   (Id. ¶¶ 23, 24, 25, 33, 59).   Notably, even without the career offender designation, defendant had 24 criminal history points, nearly twice the amount necessary for criminal history category VI, the highest category available under the Guidelines.   (Id. ¶ 35).   The corresponding advisory Guidelines range was 360 months to life imprisonment on both counts one and three, and 360 months' imprisonment count seven (capped by the statutory maximum).   The court sentenced defendant to concurrent terms of 360 months' imprisonment on all counts, and concurrent terms of 10 years' supervised release on count one, eight years' supervised release on count three, and six years' supervised release on count seven.

Defendant appealed his judgment of conviction, and the United States Court of Appeals for the Fourth Circuit affirmed in an unpublished opinion issued on June 26, 2014. Defendant also has filed numerous post-convictions motions challenging his conviction and sentence pursuant to 28 U.S.C. § 2255 and other miscellaneous provisions of law, all of which have been denied on the merits or dismissed for lack of jurisdiction.

Defendant, proceeding pro se, filed the instant motion for reduction of sentence pursuant to § 404 of the First Step Act on January 3, 2019. On February 1, 2019, the court appointed counsel for defendant with respect to his First Step Act motions. That same day, defendant filed the instant pro se motion for downward variance. On March 27, 2020, the court granted defendant's counsel's motion to withdraw, and directed the Federal Public Defender to appoint alternate counsel. On July 14, 2020, defendant's counsel filed the instant supplemental motion for reduction of sentence, supported by state court records, Federal Bureau of Prisons ("FBOP") administrative records regarding defendant, character letters, and certificates of completion for FBOP courses. The government responded in opposition on August 11, 2020, supported by sealed FBOP disciplinary report regarding defendant. The government filed contemporaneous motion to seal the disciplinary report.

On August 19, 2020, defendant filed the instant pro se motion for leave to file reply, but then moved to withdraw the motion on August 20, 2020. On August 25, 2020, defendant filed the instant pro se motion requesting that the government respond to the arguments in his original pro se First Step Act motions. On August 31, 2020, defendant, through counsel, filed supplemental motion for reduction of sentence pursuant to § 404 of the First Step Act, supported by character letters. That same day, counsel filed reply in support of the motions for sentence reduction.

On November 11, 2020, and May 19, 2021, defendant filed the instant motions to expedite the court's decision. Finally, defendant filed pro se motion for compassionate release on December 29, 2020, arguing that his risk of contracting COVID-19 while incarcerated justifies early release from the custodial portion of his sentence. As noted, the government did not respond to defendant's pro se motions.

## COURT'S DISCUSSION

A.      First Step Act Motion

On August 3, 2010, Congress enacted and the President signed into law the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for [cocaine base] trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." Dorsey v. United States, 567 U.S. 260, 269 (2012) (citing Fair Sentencing Act § 2(a), 124 Stat. at 2372). The statute also eliminated the mandatory minimum sentence for possession of a quantity of cocaine base. Fair Sentencing Act § 3, 124 Stat. at 2372. The Fair Sentencing Act, however, did not apply retroactively to defendants sentenced before August 3, 2010. See United States v. Black, 737 F.3d 280, 287 (4th Cir. 2013); United States v. Bullard, 645 F.3d 237, 249 (4th Cir. 2011).

The First Step Act of 2018 ("First Step Act") makes the provisions of the Fair Sentencing Act described above retroactively applicable to defendants who committed their offenses before August 3, 2010. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222; United States v. Gravatt, 953 F.3d 258, 260 (4th Cir. 2020). Section 404 of the First Step Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was

committed." First Step Act § 404(b). The term "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. § 404(a).

The court has discretion to deny relief under the Act even if the defendant meets the eligibility criteria. Id. § 404(c). Finally, the court may not impose a reduced sentence for defendants whose sentences previously were imposed or reduced in accordance with the Fair Sentencing Act, or if the defendant previously moved for relief under the First Step Act and the court denied the motion on the merits. Id.

Here, defendant is eligible for relief where the statutory penalties for all counts were modified by section 2 of the Fair Sentencing Act, defendant committed the offense before August 3, 2010, and he is not otherwise excluded from seeking relief under the Act. First Step Act § 404; Gravatt, 953 F.3d at 263-64; United States v. Woodson, 962 F.3d 812, 817 (4th Cir. 2020). The court thus turns to whether it should exercise its discretion to reduce defendant's sentence.

Under the law of this circuit, the court must address three related issues when considering an eligible defendant's request for sentence reduction pursuant to § 404 of the First Step Act. "First, [the court] must accurately recalculate the Guidelines sentencing range. Second, and relatedly, [the court] must correct original Guidelines errors and apply intervening case law made retroactive to the original sentence. Third, the court must consider the § 3553(a) factors to determine what sentence is appropriate." United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) (citations omitted); but see United States v. Lancaster, __ F.3d __, 2021 WL 1823287, at *3 (4th Cir. May 7, 2021) ("[T]he analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors."). Although the procedure is not a "plenary resentencing," § 404 of the First Step Act "contemplates a robust resentencing analysis."

Collington, 995 F.3d at 358, 360.

      1.      Defendant's Guidelines Range

Defendant raises numerous objections to the Guidelines range and the statutory penalties calculated at his original sentencing. In summary, defendant argues that his statutory penalty ranges are erroneous because the § 851 notice of intent to seek enhanced penalty relied on a dismissed charge, and, separately, that the jury did not find the drug quantity attributable to him under the principles set forth in United States v. Collins, 415 F.3d 304 (4th Cir. 2005). As to the Guidelines range, defendant argues he was erroneously designated a career offender.[1]

The court begins with defendant's challenges to the notice of intent to seek enhanced penalty ("§ 851 notice"). At the time of defendant's conviction and sentencing, the Controlled Substance Act provided for enhanced statutory penalty ranges if the defendant previously was convicted of a "felony drug offense." See 21 U.S.C. § 841(b)(1)(A)-(C) (2006). In this case, defendant's prior conviction increased the statutory penalty ranges to 20 years to life imprisonment on count one, 10 years to life imprisonment on count three, and not more than 30 years imprisonment on count seven. See id.

In the event the government seeks an enhanced penalty under § 841(b), the government must file an information with the court and serve a copy on defendant prior to trial or a guilty plea "stating in writing the previous convictions to be relied on," commonly referred to as a "§ 851

---

[1] The court observes that defendant's arguments, which are more particularly set forth below, were available to him at the time of his sentencing, direct appeal, and his first § 2255 motion. Principles of finality ordinarily counsel against revisiting these issues approximately 10 years later, where defendant's conviction is long since final. See Edwards v. Vannoy, __ S. Ct. __, 2021 WL 1951781, at *4 (U.S. May 17, 2021); see also Lancaster, 2021 WL 1823287, at *2. The First Step Act, however, is an exception to the doctrine of finality, and the Fourth Circuit has instructed district courts to "accurately recalculate the Guidelines . . . range" and "correct original Guidelines errors" in these proceedings. See Collington, 995 F.3d at 355.

notice" or "§ 851 information." 21 U.S.C. § 851(a)(1). "The purpose of the section 851 information 'is to give the person convicted and about to be sentenced as a second offender an opportunity to show that he is not the person previously convicted'" or that some other defect in the conviction renders it an invalid predicate. See United States v. Campbell, 980 F.2d 245, 252 (4th Cir. 1992) (quoting Baca v. United States, 312 F.2d 510 (10th Cir. 1962)); United States v. Gregg, 435 F. App'x 209, 216 (4th Cir. 2011) ("The statutory purpose of an information filed under § 851 is to enable a defendant to identify, and to have the ability to challenge, the government's intended use of any prior conviction to support a sentencing enhancement."); United States v. Lee, No. 99-4396, 2000 WL 6150, at *2 (4th Cir. Jan. 6, 2000). In addition, after conviction but before sentencing, the court must "inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." Id. § 851(b).

Defendant maintains that the § 851 notice in this case was defective where the prior conviction identified in the notice was dismissed in state court. The notice provides that "[o]n July 6, 1992, in Wilson Superior Court, located in the Eastern District of North Carolina, the defendant . . . was convicted of a felony drug offense[,] [specifically,] possession with intent to sell/deliver cocaine, Case No. 91 CRS 13229." (DE 89). Defendant argues that state prosecutors dismissed this charge. In support, defendant relies on a "notice of dismissal" filed in state court indicating that the charge of possession with intent to sell or deliver cocaine was dismissed in case number 91 CRS 13229. (Suppl. Mot. Ex. 1 (DE 339-2)). That same document, however, states that the charge was dismissed because defendant agreed to plead guilty to "sale of cocaine." (Id.; see also PSR (DE 133) ¶ 25 (providing defendant was convicted of "sell or deliver cocaine" on

July 6, 1992, in case number 91 CRS 13229)).   Furthermore, defendant admitted at trial that he

was convicted of "selling and delivery of cocaine" when he was "around" 18 or 19 years old, which

is consistent with the PSR's description of the offense.   (See Trial Tr. Day Three (DE 158) at

230:6-10; PSR (DE 133) ¶ 25).   Thus, although the § 851 notice inaccurately describes the offense

as "possession within intent to sell/deliver cocaine," as opposed to "sell or deliver cocaine," the

notice provided defendant with the accurate state court file number and date of conviction.   And,

critically, the conviction for selling cocaine qualifies as a felony drug offense for purposes of the

enhancement.   See 21 U.S.C. § 802(44) (providing "[t]he term 'felony drug offense' means an

offense that is punishable by imprisonment for more than one year under any law of the United

States or of a State or foreign country that prohibits or restricts conduct relating to narcotic

drugs . . . .").

        In materially identical circumstances, the Fourth Circuit has held that erroneous description

of the offense in the § 851 notice is not clear error that justifies reversal on appeal where the notice

otherwise correctly identifies the court of conviction, the case file number, and the date of

conviction.   As the court of appeals explained,

> The information at issue in this case satisfied the protection afforded by § 851
> [despite the fact that it erroneously described the offense as possession with the
> intent to distribute cocaine, when the actual conviction was for simple possession
> of cocaine]. The information, which was filed in the district court before trial,
> identified the proper court of conviction, the correct case number, and the July 26,
> 1996 date on which the state circuit court entered the first corrected conviction
> order. Moreover, there is no evidence in the record before us that Gregg had any
> difficulty identifying the conviction contained in the information. Gregg has not
> asserted that he was unable to ascertain what conviction was referenced in the
> information, nor has he challenged the validity of the conviction itself.
>
> In view of this record, and of Gregg's failure to show that he was unable to
> determine the nature of the conviction referenced in the government's information,
> we conclude that the mistakes in the information do not affect its content showing
> that Gregg was convicted of a felony drug offense as a result of the 1996

> proceedings in the state circuit court. Thus, we hold that Gregg's original sentence was not affected by the mistakes in the government's information, and that there was no "clear error" justifying a "corrected" sentence in this case.

Gregg, 435 F. App'x at 216-17; see also Lee, 2000 WL 6150 at *2 (upholding § 851 notice that "correctly identified the court and docket number of [the defendant's] prior conviction, which left no doubt about which conviction the government intended to rely upon for the enhancement"). Although Gregg and Lee are unpublished, non-binding opinions, the court finds this reasoning persuasive, and adopts it herein.

As in Gregg, the information in this case is sufficient where the government identified the correct court of conviction, case number, and date of conviction prior to trial, and defendant had ample opportunity to research that conviction and mount any challenges prior to sentencing and direct appeal. Defendant offers no evidence suggesting he had difficulty identifying the conviction, and he has not asserted (even at this late date) that the conviction for sale of cocaine is an invalid predicate for purposes of the enhancement.

Defendant also alleges he was not provided with an opportunity to contest the conviction under the procedures set forth in § 851(b), notwithstanding his failure to raise this issue at any time prior to final judgment. As noted above, § 851(b) requires that after conviction but before pronouncement of sentence, the court must "inquire of [the defendant] whether he affirms or denies that he has been previously convicted as alleged in the information." Defendant correctly argues that the record does not establish the court conducted the foregoing inquiry.

This alleged error, however, does not constitute grounds for invalidating the enhancement. As discussed above, defendant does not argue that he was not the person convicted of the offense identified in the notice. And where that conviction occurred more than five years before the government filed the § 851 notice, defendant is precluded from otherwise challenging the

9

conviction.  See 21 U.S.C. § 851(e) (providing that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction").  In these circumstances, the failure to provide defendant with an opportunity to contest the validity of the conviction is harmless.  United States v. Simmons, 635 F.3d 140, 147-48 (4th Cir.), rev'd on other grounds on reh'g en banc, 649 F.3d 237 (4th Cir. 2011).

The court now turns to defendant's argument that the court failed to instruct the jury to determine the drug amounts reasonably foreseeable to him as a member of the conspiracy charged in count one for purposes of establishing the statutory sentencing range.  Where, as here, a defendant proceeds to jury trial on a drug conspiracy charge, the "trial court must 'instruct a jury to use [the principles of Pinkerton v. United States, 328 U.S. 640 (1946)]' to determine the quantity of drugs attributable to an individual participant."  United States v. Denton, 944 F.3d 170, 181 (4th Cir. 2019) (describing rule established in United States v. Collins, 415 F.3d 304 (4th Cir. 2005)).  Thus, "'in order to properly apply the sentencing provisions of § 841(b) in a § 846 drug conspiracy prosecution,' Collins requires the jury to determine beyond a reasonable doubt that the threshold drug quantity specified in § 841(b)(1) was reasonably foreseeable to the defendant."  Id. (quoting United States v. Jeffers, 570 F.3d 557, 569 (4th Cir. 2009)).

The Collins rule, however, is subject to plain error review on appeal in the event the defendant fails to object to the jury instructions at the time of his trial.  Id. at 182.  As relevant here, the court may decline to notice a Collins error where "the government has presented 'overwhelming and essentially uncontroverted' evidence of the drug quantity attributable to a particular defendant.'"  Id. (quoting United States v. Foster, 507 F.3d 233, 252 (4th Cir. 2007)).

Here, the court did not instruct the jury consistent with Collins.  (See Jury Instructions

(DE 107); Verdict (DE 104)).   Defendant, however, did not object to the jury instructions on the basis of <u>Collins</u>, and thus his belated challenge to the instructions is subject to plain error review. <u>See</u> <u>Denton</u>, 944 F.3d at 181.   And the government presented overwhelming evidence establishing that the drug amounts charged in count one were reasonably foreseeable to defendant as a member of the conspiracy.

As noted above, defendant was charged with conspiring to distribute and possess with the intent to distribute 50 grams or more of cocaine base and one kilogram or more of PCP. (Indictment (DE 1)).[2]   The court begins with the PCP quantity.   At trial, co-defendants Ronald Lee and Dorrian Wingate testified that defendant rented vehicles that defendants then used to travel to the District of Columbia to purchase PCP on seven occasions.   (Trial Tr. Day Two (DE 157) at 243:14-247:9; Trial Tr. Day Three (DE 158) at 119:16-121:21).[3]   And on each occasion, the Wingates or defendant purchased six ounces of PCP and split it three ways (among the co-conspirators) for further distribution.   (Trial Tr. Day Two (DE 157) at 247:1-9; Trial Tr. Day Three (DE 158) at 120:10-23).   The testimony also established that each ounce of a controlled substance contained 28 grams, which translates to 1,176 grams of PCP (more than one kilogram). (Trial Tr. Day Three (DE 158) at 108:24-25; <u>see also</u> PSR (DE 133) ¶ 18 (indicating an ounce contains slightly more than 28 grams)).   While defendant generally denied selling any controlled substances, (<u>see</u> Trial Tr. Day Three (DE 158) at 204:21-207:20), the jury verdict and the foregoing testimony overwhelming establishes that distribution of more than one kilogram of PCP was

---

[2]      The government also alleged defendant conspired to distribute a quantity of methylenedioxymethamphetamine (MDMA).   (Indictment (DE 1)).   The <u>Collins</u> rule is not implicated by this controlled substance, however, where the government did not charge a specific quantity.

[3]      The trial record indicates defendant personally traveled to the District of Columbia on only occasion to purchase PCP.   (Trial Tr. Day Two (DE 157) at 243:14-247:9; Trial Tr. Day Three (DE 158) at 119:16-121:21).

reasonably foreseeable to defendant as a member of the conspiracy.

The testimony also establishes defendant was directly responsible for distributing more than 50 grams of cocaine. The confidential informant in this case purchased over 50 grams of cocaine base from defendant's co-conspirators over the course of six transactions, and Ronald Lee and Dorrian Wingate both testified that defendant arranged the first sale and shared in the profits of each sale. (Trial Tr. Day Two (DE 157) at 251:9-254:3; Trial Tr. Day Three (DE 158) at 115:15-119:12, 185:13-187:25). The co-defendants further testified that defendant directly distributed multiple ounces of cocaine base over the course of the conspiracy. (Trial Tr. Day Two (DE 157) at 212:12-220:18, 223:6-224:4, 236:7-238:8, 241:3-242:22; Trial Tr. Day Three (DE 158) at 102:20-104:16, 107:17-115:6) Finally, Greg Evans testified that he sold 14 grams of cocaine base to defendant twice a week for several months in 2010. (Trial Tr. Day Three (DE 158) at 171:1-178:21). As noted above, defendant generally denied selling cocaine base during the conspiracy, but the testimony set forth above is overwhelming and "essentially" uncontroverted in light of the jury verdict. See Foster, 507 F.3d at 252. The evidence establishes defendant was directly involved in nearly every significant transaction in this case. In other words, this is not a case where the evidence suggests that the drug quantities were not reasonably foreseeable to defendant. Accordingly, for purposes of establishing the statutory penalty and Guidelines ranges on count one, the court maintains the amounts alleged in the indictment: 50 grams of cocaine base and one kilogram of PCP.[4]

---

[4]     The court also observes that even if defendant had established a Collins error, the remedial procedure is unavailable in a First Step Act proceeding. Where a defendant establishes a Collins error on direct appeal (that survives plain error review), the Fourth Circuit will "withhold judgment" and allow the government to elect between retrial or resentencing using the lowest drug quantity and corresponding penalty in 21 U.S.C. § 841(b)(1)(C). 415 F.3d at 314-15. By contrast, the only available remedy in a First Step Act proceeding is a reduced sentence, and the court therefore cannot give the government an opportunity to retry defendant. See First Step Act § 404(b), 132 Stat. at 5222.

The final issue regarding the Guidelines range is defendant's challenge to his career offender designation. A defendant is a career offender where:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). As noted above, the court "must" correct an erroneous career offender designation in a First Step Act proceeding. See Lancaster, 2021 WL 1823287, at *4 (directing district court to apply non-retroactive "intervening case law" to recalculate defendant's Guidelines range without career offender designation); Collington, 995 F.3d at 355 (explaining district court must "accurately recalculate the Guidelines Sentencing range" and "correct original Guidelines errors" in a First Step Act proceeding).

Defendant contests the third element of the career offender definition, arguing that the government cannot establish he has two prior convictions for a crime of violence or a controlled substance offense. At the original sentencing, defendant was designated a career offender on the basis of four prior convictions, but only two of them remain valid career offender predicates: his North Carolina convictions for common law robbery and sell or deliver cocaine. (See PSR (DE 133) ¶¶ 23, 25, 59; PSR Modification (DE 352)). Defendant argues that he entered pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to the common law robbery and sell or deliver cocaine convictions, and these convictions, therefore, cannot serve as career offender predicates.[5]

---

[5]    The court observes that the plea transcript for the sell or deliver cocaine conviction is at best ambiguous as to whether defendant pleaded guilty or "no contest." (DE 332-1 at 1-2). Defendant answered "yes" to the question "do you now personally plead guilty" and the alternative phrase "no contest" beside "guilty" is crossed out. (Id.). The first sentence of the transcript also indicates that defendant offered a "plea of guilty." (Id.). Defendant, however, wrote "no answer" in response to the question "are you in fact guilty?" (Id.).

       Defendant did not provide his transcript of plea for the common law robbery conviction. Notably, the PSR

This argument is without merit.

An Alford plea is a plea arrangement in which the defendant waives trial and consents to criminal conviction and punishment but does not admit guilt. See 400 U.S. at 32-33, 36. In United States v. Alston, the Fourth Circuit held that where a defendant enters an Alford plea, the federal sentencing court cannot use the prosecutor's factual proffer at the plea hearing to determine whether the prior conviction qualifies as a career offender predicate. 611 F.3d 219, 226 (4th Cir. 2010). The holding, however, is limited to cases where the sentencing court must examine the precise conduct charged in the indictment or admitted during the plea colloquy to determine whether an offense qualifies as a career offender predicate under the Guidelines.[6] See id. Alston has no application where the convictions categorically qualify as predicate offenses,[7] thereby negating the need to examine the prosecutor's factual proffer. See id. Thus, Alston is inapplicable where "the district court relie[s] simply on the fact of conviction, not the prosecutor's version of facts from the plea colloquy, to determine that [a prior] conviction qualifie[s] as a predicate offense." See United States v. Mouzone, 687 F.3d 207, 221 (4th Cir. 2012); United States v. King, 673 F.3d 274, 282-83 (4th Cir. 2012).

---

indicates defendant pleaded guilty to both convictions. (PSR (DE 133) ¶¶ 23, 25).

[6] This procedure is known as the "modified categorical approach" and its application is limited to cases where the statutory definition of the predicate crime "list[s] elements in the alternative, and thereby define[s] multiple crimes." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). In that circumstance, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id.

[7] Under the categorical approach, the sentencing court "ask[s] whether the offense of conviction – no matter the defendant's specific conduct – necessarily falls within the Guidelines' description of [the predicate offense]." United States v. Ward, 972 F.3d 364, 368 (4th Cir. 2020). The court must "set aside the particulars of [the defendant's] actions underlying his convictions, focusing instead on the fact of conviction and the statutory definition of the prior offense." Id. (internal quotation omitted); see also Mathis, 136 S. Ct. at 2248.

Here, defendant's prior conviction for common law robbery "categorically qualifies as 'robbery,' as that term is used within § 4B1.2(a)(2)." See United States v. Gattis, 877 F.3d 150, 155-56 (4th Cir. 2017). Similarly, defendant's conviction for sell or deliver cocaine categorically qualifies as a controlled substance offense under the Guidelines.[8] See United States v. Dozier, 848 F.3d 180, 187 (4th Cir. 2017) (holding West Virginia controlled substance offense was a categorical match with generic controlled substance offense as defined in U.S.S.G. § 4B1.2(b)); Strain v. United States, No. 5:14-CR-60-FL-1, 2017 WL 3669531, at *3 (E.D.N.C. Aug. 24, 2017) (finding the elements of N.C. Gen. Stat. § 90-95(a)(1) and the West Virginia statute at issue in Dozier were materially indistinguishable, and thus "[N.C. Gen. Stat. § 90-95(a)(1)] is a categorical match" with generic controlled substance offense), appeal dismissed, 707 F. App'x 152 (4th Cir. Dec. 22, 2017); see also Order, United States v. Abdullah, No. 5:04-CR-371-FL-1 (E.D.N.C. Oct. 9, 2020) (DE 343), aff'd, __ F. App'x __, 2021 WL 1818956 (4th Cir. May 6, 2021). Accordingly, the fact that defendant entered Alford pleas to his predicate convictions has no bearing on his career offender designation. See Mouzone, 687 F.3d at 221; King, 673 F.3d at 282-83.

Defendant also argues that his convictions for common law robbery and sell or deliver cocaine do not qualify as career offender predicates based on limitations period set forth in

---

[8]     The Guidelines define "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Defendant's conviction for sell or deliver cocaine is proscribed by N.C. Gen. Stat. § 90-95(a)(1), which makes it unlawful "for any person to manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance."

U.S.S.G. § 4A1.2(e).   Section 4A1.2(e)(1) provides that

> [a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1).   Here, the instant offense "commenced" in November 2004.   (PSR (DE 133) ¶ 18).   As to the common law robbery conviction, defendant was sentenced to three years' imprisonment and released on October 28, 1991.   (Id. ¶ 23).   Thus, the conviction "resulted in defendant being incarcerated" during a portion of the 15-year period preceding November 2004.   U.S.S.G. § 4A1.2(e)(1).   The state court also sentenced defendant to six years' imprisonment for the sell or deliver cocaine conviction on July 6, 1992, which is within 15 years of November 2004.   (PSR (DE 133) ¶ 25).   Accordingly, defendant's career offender designation did not contravene U.S.S.G. § 4A1.2(e)(1).

Based on the foregoing, and taking into account the retroactive penalty provisions established by the First Step Act, the court finds the revised the statutory penalty ranges and corresponding Guidelines ranges are those set forth in the chart below.   There is no change to the statutory penalties or Guidelines ranges in counts one and seven (relative to defendant's original sentencing) based on the (valid) § 851 notice, the quantity of PCP at issue in count one, and the fact that count seven charged defendant with distributing a quantity of cocaine.

| Offenses of Conviction | Statutory Penalty Range | Guidelines Range |
|---|---|---|
| Count One: conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, one kilogram or more of PCP, and a quantity of MDMA | Not less than 20 years nor more than life imprisonment; 10 years to life supervised release | 360 months to life imprisonment |
| Count Three: Distribute five grams or more of cocaine base | Not more than 30 years' imprisonment; six years to life supervised release | 360 months' imprisonment, capped by the statutory maximum |
| Count Seven: Distribute a quantity of cocaine base | Not more than 30 years' imprisonment; six years to life supervised release | 360 months' imprisonment, capped by the statutory maximum |

(See PSR Modification (DE 352)); see also 21 U.S.C. § 841(b)(1)(A), (C).[9]  The Guidelines range

is based on offense level 37 and criminal history category VI.  (PSR Modification (DE 352)).

The offense level is 37 where the maximum statutory penalty is life imprisonment and defendant

remains a career offender.  U.S.S.G. § 4B1.1(b)(1).  The criminal history category is VI based

on defendant's career offender designation.  Id.  Defendant's current custodial sentence of 360

months' imprisonment on all counts is within the revised Guidelines range.

    2.       Section 3553(a) factors

Defendant requests that the court reconsider the sentence and grant a downward variance

from the Guidelines range established above based on the 18 U.S.C. § 3553(a) factors, arguing

primarily that his post-sentencing conduct justifies a reduction in sentence.  The court, however,

must balance the offense conduct and criminal history against any post-sentencing rehabilitation

efforts.  And in this case, the court agrees with the government that a downward variance is not

warranted after thorough review of the § 3553(a) factors.

---

[9]      Where defendant was convicted of distributing five grams or more of cocaine base in count three, the statutory penalty is reduced to not more than 30 years' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(C) and the § 851 notice. The remaining statutory penalties are not affected by the First Step Act for the reasons set forth above.

Defendant was involved in an extensive, multi-year conspiracy to distribute controlled substances in this district. The trial testimony established defendant was a major player in the conspiracy. Defendant, for example, was involved in interstate distribution of significant quantities of PCP, and he sought to profit by introducing PCP as a new controlled substance in this district. (Trial Tr. Day Two (DE 157) at 243:14-247:9; Trial Tr. Day Three (DE 158) at 119:16-121:21). Over the course of the conspiracy, defendant distributed multiple ounces of cocaine base to both addicts and other dealers. (Trial Tr. Day Two (DE 157) at 212:12-220:18, 223:6-224:4, 236:7-238:8, 241:3-242:22; Trial Tr. Day Three (DE 158) at 102:20-104:16, 107:17-115:6, 171:1-178:21).

Defendant also has an extensive and violent criminal history, which has continued while incarcerated. His criminal history includes convictions for voluntary manslaughter, common law robbery, assault with a deadly weapon inflicting serious injury, assaulting a government official (while incarcerated), accessory after the fact to common law robbery, accessory after the fact to robbery with a dangerous weapon, and assault inflicting serious bodily injury. (PSR (DE 133) ¶¶ 21-34). During his current period of incarceration, defendant violently assaulted another inmate, breaking his jaw. (PSR Modification (DE 352); Gov't Resp. (DE 345) at 10).

Turning to post-sentencing conduct, with the exception of the disciplinary conviction noted above, defendant's conduct has been exemplary. Defendant has maintained employment, earned his GED and a paralegal certificate from a college correspondence course, and completed numerous courses. (Progress Report (DE 339-4). He is currently enrolled in an extensive therapeutic program known as "Project LEAD" and has progressed to teaching some courses within the program. (Id. at 2; Character Letters (DE 353-1)). Finally, defendant was enrolled in the inmate companion program between 2017 and 2019, where he provided emotional support for

inmates experiencing mental health crises.   (FBOP Administrative Note (DE 339-5)).   Numerous inmates wrote character letters in support of defendant's release.   (DE 339-8, 353-1).

Defendant also emphasizes his abusive upbringing, and lack of financial or emotional support during his childhood.   When released, defendant intends to live with his fiancée and has a conditional offer of employment.   (Suppl. Mot. (DE 339) at 8).

Having fully considered defendant's arguments and the relevant § 3553(a) factors, the court finds the current custodial sentence remains necessary to reflect the seriousness of the offense, provide general and specific deterrence to criminal conduct, and to protect the public from further crimes by defendant.   While the court commends defendant for his achievements in custody, and has considered his abusive upbringing and release plan, these factors do not justify a downward variance from the Guidelines in light of the offense conduct, criminal history, and disciplinary infraction described above.

Furthermore, even if the Guidelines range established above is erroneous, the court would impose the current custodial sentence of 360 months' imprisonment as an upward variance based on the § 3553(a) factors analysis set forth herein.   See United States v. Hargrove, 701 F.3d 156, 161-63 (4th Cir. 2012).   Notably, defendant remains subject to a maximum statutory punishment or 360 months' imprisonment even if the court of appeals determines that the Collins error requires that the court use the statutory penalties set forth in 21 U.S.C. § 841(b)(1)(C), provided that the § 851 notice is valid.   In that event, the court specifically finds that it would impose a sentence of 360 months' imprisonment as an upward variance from the revised Guidelines range of 262 to 327 months' imprisonment.   See U.S.S.G. § 4B1.1(b).

The court will reduce the term of supervised release to six years in count three to account for the revised statutory penalty, but this term will run concurrent to the previously imposed term

of 10 years' supervised release in count one.   As noted above, the custodial sentence will remain intact.   Accordingly, defendant's motions for reduction of sentence pursuant to § 404 of the First Step Act are granted in part and denied in part.   Defendant's related motions to expedite ruling, for leave to file reply, to withdraw motion for leave to file reply, to direct the government to respond to his pro se arguments,[10] and for downward variance are   denied as moot.

B.      Motion for Compassionate Release

The court next turns to defendant's motion for compassionate release.   With limited exceptions, the court may not modify a sentence once it has been imposed.   18 U.S.C. § 3582(c). One exception is the doctrine of compassionate release, which permits sentence reductions in extraordinary and compelling circumstances.   As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now permits a defendant to file motion for compassionate release in the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act § 603, 132 Stat. at 5239.

The court may reduce a defendant's term of imprisonment if it "first [finds] that 'extraordinary and compelling reasons warrant[] [a sentence reduction], then consider[s] the [factors set forth in 18 U.S.C. § 3553(a)], and ultimately determine[s] that the requested reduction is consistent with any 'applicable policy statement issued by the Sentencing Commission.'"   18 U.S.C. § 3582(c)(1)(A); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021); see also United

---

[10]      Although the court typically does not address pro se submissions where defendant is represented by counsel, the court has endeavored herein to address all of defendant's arguments, both pro se and counseled, in the interests of justice and thorough review of defendant's First Step Act motions.

States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020).[11]   The court has "broad discretion" to deny a motion for compassionate release if it determines the § 3553(a) factors do not support a sentence reduction, even if the defendant establishes extraordinary and compelling reasons for release.   See Kibble, 992 F.3d at 330-31; McCoy, 981 F.3d at 275; see also United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020).

Here, defendant fails to establish extraordinary and compelling reasons for release where he has not provided medical records or other documentation establishing that his recent COVID-19 diagnosis has created the medical problems alleged in the pro se motion.   Furthermore, for the reasons set forth above, the § 3553(a) factors do not support a sentence reduction in this case even when considered in connection with defendant's risk of developing complications from COVID-19.   Accordingly, defendant's motion for compassionate release is denied.

C.      Motion to Seal

The government moves to seal a disciplinary report filed in support of its opposition to defendant's motions for sentence reduction.   Defendant does not object to the request to seal the record.   The public has received adequate notice of the motion to seal.   No less drastic alternative to sealing is available where the private information appears throughout the filing.   The court further finds that defendant's interest in preserving the confidentiality of this record outweighs any

---

[11]      The Sentencing Commission has not adopted a policy statement applicable to motions for compassionate release filed by defendants in the sentencing court.   Kibble, 992 F.3d at 330; McCoy, 981 F.3d at 281-83. Accordingly, the district court is not required to consider whether the reduction is consistent with U.S.S.G. § 1B1.13, the policy statement applicable to motions for compassionate release filed by the Federal Bureau of Prisons.   See Kibble, 992 F.3d at 330-31.

public interest in disclosure.   Accordingly, the motion to seal is granted.

## CONCLUSION

Based on the foregoing, defendant's motions for sentence reduction pursuant to § 404 of the First Step Act (DE 324, 325, 339, 353) are GRANTED IN PART and DENIED IN PART. Defendant's previously imposed sentence of eight years' supervised release in count three is reduced to six years, to run concurrently with all previously imposed terms of supervised release. Except as expressly modified herein, all provisions of the judgment of conviction dated September 26, 2011, remain in effect.   Defendant's motions for downward variance (DE 327), for leave to file reply (DE 348), to withdraw motion for leave to file reply (DE 349), for order directing the government to respond to defendant's pro se arguments (DE 351), and to expedite (DE 355, 359) are DENIED AS MOOT.   Defendant's motion for compassionate release (DE 356) is DENIED. Finally, the government's motion to seal (DE 347) is GRANTED and the clerk is DIRECTED to maintain docket entry 346 under seal until further order of the court.

SO ORDERED, this the 28th day of May, 2021.

LOUISE W. FLANAGAN
United States District Judge